JOANNE D'AURIA *v.* FRANK SOLOMINE ET AL.
(AC 27892)

Gruendel, Robinson and West, Js.

Argued March 19—officially released May 13, 2008

*Bruce Matzkin*, with whom was *Andrew J. Campbell*, for the appellants (defendants).

*Frank J. Kolb, Jr.*, with whom, on the brief, was *Joseph A. Marotti*, for the appellee (plaintiff).

*Opinion*

WEST, J. The defendants, Frank Solomine and Patrick Solomine, appeal from the judgment of the trial court awarding the plaintiff, Joanne D'Auria, damages and costs in this action for breach of a contract for the purchase of real property. The defendants raise several claims on appeal.[1] We decline to review those claims, however, because we conclude that the appeal is moot.

The relevant facts and procedural history are as follows. On October 19, 2002, the defendants signed an agreement to purchase property owned by the plaintiff in East Haven. On this same date, the defendants also

---

[1] The defendants claim that the court improperly (1) found that the twenty-five day financing contingency period began to run upon the defendants' payment of their deposit, (2) found that the defendants materially breached the sale and purchase agreement with the plaintiff, (3) held that the liquidated damages provision contained in the sale and purchase agreement was enforceable, (4) excluded statements made by the plaintiff's real estate agent and real estate attorney, (5) denied the defendants' motion in limine, (6) refused to allow the defendants to make an opening statement and (7) assessed costs against the defendants.

paid an initial deposit of $1000. The defendants paid an additional deposit of $8000, as required by the agreement, by check dated October 28, 2002. In accordance with the agreement, the $9000 deposit was held in escrow by the Realtor, Cyr Real Estate, LLC, prior to closing. Furthermore, the agreement provided that, in the event of a default, the $9000 deposit was to be considered liquidated damages.[2] In a letter dated December 3, 2002, the defendants informed the plaintiff that they were unable to secure financing to purchase the property and therefore requested the return of the $9000 deposit.

On February 26, 2003, the plaintiff commenced this action, alleging breach of contract and quantum meruit. Because the defendants did not notify the plaintiff of their inability to obtain financing within the contractual contingency period, the plaintiff was seeking payment of the deposit made by the defendants. On May 7, 2003, the plaintiff's motion for default for failure to appear was granted. A judgment was rendered on the default, and the plaintiff was awarded liquidated damages, attorney's fees, interest and costs. On December 15, 2003, the court, *Skolnick, J.*, granted the defendants' motion to open the judgment, which was filed in September, 2003. Subsequently, the defendants cited in Cyr Real Estate, LLC, and brought a third party complaint against it, alleging improper disbursement of funds held in escrow. After a court trial, the court, *Hon. Frank S. Meadow*, judge trial referee, concluded in a June 5, 2006 memorandum of decision that the defendants breached

---

[2] The agreement contained a provision regarding the contingency of the financing. It provides: "If BUYER is unable to secure a commitment for such financing within the number of days specified in #5e, and fails to notify SELLER or SELLER'S Agent in writing of such inability within the time limit specified in #5e, this contingency shall be deemed satisfied and this Agreement shall continue in full force and effect." The agreement specified that the buyer had twenty-five days from the acceptance of the offer within which to obtain financing.

the contract by failing to notify the plaintiff of their inability to secure financing within the contractual contingency period. The court rendered judgment in favor of the plaintiff in the amount of $9000 plus costs and found in favor of Cyr Real Estate, LLC, on the third party complaint. The $9000 deposit was released subsequently from escrow and turned over to the plaintiff.

The defendants appealed from the June 5, 2006 judgment on July 26, 2006. On December 11, 2006, the plaintiff filed a chapter 7 bankruptcy petition. She listed the defendants' appeal from the judgment as an unsecured nonpriority claim against her estate.[3] On March 20, 2007, the plaintiff received a bankruptcy discharge. In her brief, the plaintiff argues that "any possible debt that existed between her and the defendants-appellants by virtue of the real estate contract that existed between the parties has been discharged as to the plaintiff-appellee in bankruptcy." As a result, the plaintiff argues, the appeal in the present case is moot.

"Mootness implicates [this] court's subject matter jurisdiction and is thus a threshold matter for us to resolve. . . . It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot. . . . [A] subject matter jurisdictional defect may

---

[3] In her petition, the plaintiff described the claim: "Judgment entered in favor of [the plaintiff] is being appealed by [the defendants] seeking to recover monies awarded to [the plaintiff]."

not be waived . . . [or jurisdiction] conferred by the parties, explicitly or implicitly. . . . [T]he question of subject matter jurisdiction is a question of law . . . and, once raised, either by a party or by the court itself, the question must be answered before the court may decide the case." (Internal quotation marks omitted.) *Lucas* v. *Deutsche Bank National Trust Co.*, 103 Conn. App. 762, 766, 931 A.2d 378, cert. denied, 284 Conn. 934, 935 A.2d 151 (2007).

In the present case, the plaintiff argues in her brief that the appeal is moot because any debt that could have existed between her and the defendants was discharged when she received a bankruptcy discharge. She cites 11 U.S.C. § 727[4] and 11 U.S.C. § 524[5] to support her argument. The defendants did not file a reply brief to respond to this argument. We agree with the plaintiff that the debt has been discharged and that, therefore, the appeal is moot.

In *Lightowler* v. *Continental Ins. Co.*, 255 Conn. 639, 769 A.2d 49 (2001), our Supreme Court noted that "under 11 U.S.C. § 727, a debtor whose bankruptcy petition satisfies the requirements of chapter 7 of the Bankruptcy Code generally is entitled to the discharge of any debt that arose prior to the filing of the petition. The discharge of a debt pursuant to § 727 triggers the operation of the provisions of 11 U.S.C. § 524, which shield the debtor from any personal liability for that debt by affording the debtor the right to an injunction

---

[4] Section 727 of title 11 of the United States Code provides the conditions for the discharge of debt due to bankruptcy. See 11 U.S.C. § 727.

[5] Section 524 (a) of title 11 of the United States Code provides in relevant part: "A discharge in a case under this title—1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title . . . (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor . . . ."

against the commencement or continuation of an action . . . to collect, recover or offset any such debt as a personal liability of the debtor . . . ." (Internal quotation marks omitted.) *Lightowler* v. *Continental Ins. Co.*, supra, 644–45. Our Supreme Court continued to define a claim that arose prior to the filing of the petition. It stated that "[a] claim will be deemed pre-petition when it arises out of a relationship recognized in, for example, the law of contracts or torts. A claim exists only if before the filing of the bankruptcy petition, the relationship between the debtor and the creditor contained all of the elements necessary to give rise to a legal obligation—a right to payment—under the relevant non-bankruptcy law." (Internal quotation marks omitted.) Id., 647. In the present case, the debt in question arose out of a relationship recognized in the law of contracts. Indeed, the defendants had signed a sale agreement to purchase property owned by the plaintiff.

The question then becomes whether the debt in this case, which is contingent on the reversal of the trial court's judgment, is a debt falling within the ambit of debts discharged pursuant to 11 U.S.C. § 727. The term "claim" is defined in the Bankruptcy Code as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . . ." 11 U.S.C. § 101 (5) (A). Our Supreme Court noted, therefore, that "[b]y this broadest possible definition . . . [of the term claim, the Bankruptcy Code] contemplates that all legal obligations of the debtor, *no matter how remote or contingent,* will be able to be dealt with in the bankruptcy case." (Emphasis in original; internal quotation marks omitted.) *Lightowler* v. *Continental Ins. Co.*, supra, 255 Conn. 648. In the present case, the debt is contingent on the reversal of the trial court's judgment, and it falls within the definition of a claim as stated in the

Bankruptcy Code. As a result, it is capable of being discharged pursuant to 11 U.S.C. § 727.[6]

Therefore, when the plaintiff was granted a discharge of debt, this claim by the defendants was discharged. "A discharge in bankruptcy is neither a payment nor an extinguishment of a debt; the discharge simply bars future legal proceedings to enforce the discharged debt against the debtor. . . . A debt remains in existence after a discharge in bankruptcy, although it is divested of its character as a personal obligation that is legally enforceable." (Citations omitted.) *Ramsay* v. *Camrac, Inc.*, 96 Conn. App. 190, 201, 899 A.2d 727, cert. denied, 280 Conn. 910, 908 A.2d 538 (2006). In the present case, therefore, the defendants are prohibited, under 11 U.S.C. § 524, from instituting future proceedings to enforce any claim or debt allegedly owed to them by the plaintiff. Because the defendants are prohibited from instituting any legal proceedings to enforce this claim, they can obtain no practical relief, and the appeal is moot. We therefore decline to review the defendants' claims. See *Lucas* v. *Deutsche Bank National Trust Co.*, supra, 103 Conn. App. 766.

The appeal is dismissed.

In this opinion the other judges concurred.

---

[6] Section 523 (a) of title 11 of the United States Code lists several debts, which are excepted from the debts subject to automatic discharge set forth in the code. The debt in the present case does not fall within any of these exceptions. See 11 U.S.C. § 523 (a).